IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHARITY A. SIMONEAU,            )
                               )
                  Plaintiff,   )
                               )
vs.                            )      Case No. 06-1176-JTM
                               )
MICHAEL J. ASTRUE,[1]          )
Commissioner of                )
Social Security,               )
                               )
                  Defendant.   )
_____)


RECOMMENDATION AND REPORT


        This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits and supplemental security income payments.

The matter has been fully briefed by the parties and has been

referred to this court for a recommendation and report.

        The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

_____

        [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

1

conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can

2

establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to

step four, at which the agency assesses whether the claimant can

do his or her previous work; unless the claimant shows that he or

she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth

and final step requires the agency to consider vocational factors

(the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of

the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).

At step five, the burden shifts to the Commissioner to show that

the claimant can perform other work that exists in the national

economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987

F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this

burden if the decision is supported by substantial evidence.

Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will

assess the claimant's residual functional capacity (RFC).  This

RFC assessment is used to evaluate the claim at both step four

and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) Guy E. Taylor issued his

decision on February 24, 2006 (R. at 17-26).  At step one, the

ALJ found that plaintiff had not performed substantial gainful

4

activity since her alleged onset date of June 1, 2003 (R. at 17, 18).  At step two, the ALJ stated that plaintiff has the following severe impairments: dysthymic disorder and arthritis (R. at 19).  At step three, the ALJ concluded that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After establishing plaintiff's RFC, the ALJ, relying on the testimony of a vocational expert (VE) found at step four that plaintiff could perform past relevant work as a cashier (R. at 23).  In the alternative, the ALJ, relying on VE testimony, found that plaintiff could perform other work in the national economy that exists in significant numbers.  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23-25).

**I.  Did the ALJ fail to properly consider all the medical evidence of record in making his findings as to plaintiff's mental impairments?**

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  It is clear legal error to ignore a medical opinion.  Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  An ALJ is not entitled to pick and choose from a medical opinion or medical treatment records, using only those parts that are favorable to a finding of nondisability.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); Lee v. Barnhart, 117 Fed. Appx. 674, 678 n.2 (10th Cir. Dec. 8, 2004).  The ALJ cannot

impermissibly ignore the evidence as a whole while choosing instead to abstract selective pieces of evidence favorable to their position.  See O'Connor v. Shalala, 873 F. Supp. 1482, 1491 (D. Kan. 1995); Jones v. Sullivan, 804 F. Supp. 1398, 1406 (D. Kan. 1992); Claassen v. Heckler, 600 F. Supp. 1507, 1511 (D. Kan. 1985).  An ALJ, in addition to discussing the evidence supporting his decision, must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996); see Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005).  The ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

In her brief, plaintiff contends that the ALJ failed to properly consider all the medical evidence of record in making his findings, including his findings at steps two and three. Plaintiff notes that various treating or examining professionals had opined that plaintiff was disabled.

The ALJ mentioned a 2003 psychological evaluation prepared by Dr. Whitten, a psychologist.  Twice in his decision, the ALJ noted that the September 4, 2003 letter from Dr. Whitten stated that with care claimant should be able to return to effective working (R. at 20, 21).  Dr. Whitten indicated the following in his letter of September 4, 2003, which is attached to his

6

evaluation:

> Charity is carrying a life-long weight of
> depression, anger, fear, and insecurity and
> has many diagnoses and potential
> diagnoses...She also reports a host of
> physical issues that cause her major
> distress, some of which may be somewhat
> psychosomatic in nature, reflecting the
> emotional needs.  She will need a good deal
> of care over a long period of time to resolve
> many of these issues.  She may well want to
> proceed with an application for disability,
> but with care she should be able to also
> return to effective working.

(R. at 253).  Thus, although the ALJ noted that Dr. Whitten had

indicated that with care she should be able to return to work,

the ALJ failed to mention the fact that Dr. Whitten also stated

that she would need a good deal of care over a long period of

time to resolve her issues, and may well want to proceed with an

application for disability.

Dr. Whitten prepared a detailed psychological evaluation

which consisted not only of an interview, but the administration

of numerous tests.  In his evaluation, under "work endurance,"

Dr. Whitten reported:

> She appears near emotional collapse and this
> may be strongly influencing multiple physical
> complaints that reflect depression and
> anxiety and potential posttraumatic stress
> nightmares of being killed.

(R. at 257).  Dr. Whitten diagnosed plaintiff with chronic

dysthymic disorder, major depression, likely posttraumatic stress

disorder, possible attention-deficit/hyperactivity disorder, a

7

likely dissociative disorder, and borderline personality

disorder.  Dr. Whitten gave plaintiff a GAF of 35, noting that

she had "major impairment in social, emotional, and occupational

functioning" (R. at 258).[2]  However, the ALJ never mentioned any

of these findings by Dr. Whitten, and only found severe

impairments of dysthymic disorder and arthritis.

Similarly, an intake assessment by Pamela Anderson, LSCSW,

_____

[2]GAF (global assessment of functioning) scores can be found
in the Diagnostic and Statistical Manual of Mental Disorders.
The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect
> and circumstantial speech, occasional panic
> attacks) **OR moderate difficulty in social,
> occupational or school functioning** (e.g., few
> friends, conflicts with peers or co-workers).
>
> 41-50: **Serious symptoms** (e.g., suicidal
> ideation, severe obsessional rituals,
> frequent shoplifting), **OR any serious
> impairment in social, occupational, or school
> functioning** (e.g., no friends, unable to keep
> a job) (emphasis in original).
>
> 31-40: **Some impairment in reality testing or
> communication** (e.g., speech is at times
> illogical, obscure or irrelevant), **OR major
> impairment in several areas, such as work or
> school, family relations, judgment, thinking
> or mood** (e.g., depressed man avoids friends,
> neglects family, and is unable to work...).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)
(4th ed., text revision, American Psychiatric Association 2000 at
34) (emphasis in original).  The ALJ did mention in his opinion
the report of Dr. Anderson on August 31, 2005 giving plaintiff a
current GAF of 50 and that her highest GAF score over the past
year was 60 (R. at 21, 412), but failed to mention the lower GAF
score by Dr. Whitten.

on September 30, 2003 gave plaintiff a current GAF of 40 and
further indicated that her highest GAF over the past year was 50
(R. at 191).  However, these GAF scores were also not mentioned
by the ALJ in his decision.  Standing alone, a low GAF score does
not necessarily evidence an impairment seriously interfering with
a claimant's ability to work.  A claimant's impairment might lie
solely with the social, rather than the occupational sphere.  A
GAF score of fifty or less, however, does suggest an inability to
keep a job.  For this reason, such a GAF score should not be
ignored.  Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir.
Dec. 8, 2004).

Dr. Subramanian prepared a report based on an examination of
the plaintiff on March 18, 2004.  In that report, his impressions
included history of seizure disorder, on medication, history of
chronic anxiety, depression and schizoaffective disorder, and
cervical joint pain (R. at 229-231).  He concluded by stating
that although she is not disabled because of any physical
limitation, he further indicated that "because of her problems as
mentioned above, she may not be able to [be] employed gainfully"
(R. at 231).  This opinion was not mentioned by the ALJ in his
decision.

An ALJ may not use only portions of a report which are
favorable to his decision, while ignoring other parts of the
report.  Chester v. Apfel, 1999 WL 360176 at 3-4 (10th Cir. June

4, 1999)(ALJ improperly ignored ALJ score of 30); <u>Banks v. Apfel</u>, 2000 WL 1863382 at *11 (D. Kan. Nov. 13, 2000)(ALJ improperly ignored GAF score of 39).  The ALJ must discuss significantly probative evidence which he rejects.  The ALJ only mentioned a portion of Dr. Whitten's report that was favorable to his finding of nondisability, while ignoring many other opinions expressed by Dr. Whitten favorable to the plaintiff, including her need for care over a long period of time, his suggestion she apply for disability, his finding that she is near emotional collapse, and assigning plaintiff a GAF score of 35, noting major impairments in social, emotional and occupational functioning.  The ALJ also ignored Ms. Anderson's GAF score of 40 given shortly after Dr. Whitten's report.  The ALJ completely ignored the opinion expressed by Dr. Subramanian that she may not be able to work. The failure to consider this evidence implicates nearly every step in the analysis, including findings at step two through step five, plaintiff's credibility, and the RFC findings.  Therefore, the case must be remanded in order for the ALJ to consider all the relevant medical evidence in this case, including the medical evidence set forth above.[3]

---

[3]Plaintiff has raised other issues, including the ALJ's credibility analysis, and his findings at step four and step five.  The court will not address these issues because proper consideration of the medical evidence may impact the credibility analysis and the findings of the ALJ at step four and step five. <u>See Robinson</u>, 366 F.3d at 1085.

Although not specifically mentioned by the plaintiff, the court would note one additional matter that should be addressed since the case is being remanded.  In his RFC findings, the ALJ limited plaintiff to performing simple, unskilled, repetitive job tasks (R. at 25).  This was included in the hypothetical question to the vocational expert (VE) (R. at 503).  However, Dr. Anderson, as noted by plaintiff in her brief, found that plaintiff was limited to a "fair"[4] ability in four areas, including:

1.  Deal with work stresses.  Dr. Anderson noted that current symptoms of depression and anxiety could interfere with the ability to cope with work-related stresses.

2.  Understand, remember and carry out complex job instructions.

3.  Behave in an emotionally stable manner and 4. Demonstrate reliability.  Dr. Anderson noted that plaintiff's depression and anxiety may compromise her emotional stability, and that a possible psychosomatic component could interfere with her ability to keep a regular work schedule.

(R. at 414-415).

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and

---

[4]"Fair" is defined as the ability to function being limited but satisfactory (R. at 414).

address medical source opinions.  If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why
the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.
SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);
Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891
n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,
1120 (10th Cir. 1993).

      The ALJ simply summarized the evidence and then set forth
his RFC findings for the plaintiff.  However, the ALJ failed to
provide a narrative discussion describing how the evidence
supported his RFC findings.  The ALJ discussed in detail Dr.
Anderson's psychological evaluation and RFC findings, including
the fact that Dr. Anderson's report found that plaintiff would
have a fair or better ability to function in all the areas rated
(R. at 21).  However, without explanation, the ALJ included a
limitation to simple, unskilled, repetitive work, but failed to
include limitations in other areas in which Dr. Anderson found
that her ability to perform was fair (limited but satisfactory).
On remand, the ALJ is reminded that he must make RFC findings
which comply with the requirements of SSR 96-8p.

**II.  Should the case be reversed and remanded for further**
**hearing, or reversed for an award of benefits?**

      At step five, the burden of proof is on the defendant to
produce evidence that the claimant could perform other work in

the national economy.  Where the burden is not met, reversal is appropriate.  Harris v. Secretary of Health & Human Services, 821 F.2d 541, 544 (10th Cir. 1987).  When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits.  When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).  The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.  Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993).  A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits.  Harris, 821 F.2d at 545; see Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006).  The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

13

Plaintiff argues that the medical evidence establishes that plaintiff meets listed impairment 12.04 (affective disorders); thus, a remand for further hearing would serve no useful purpose. Plaintiff has the burden at step three of demonstrating, through medical evidence, that his impairments meet all of the specified medical criteria contained in a particular listing.  Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).   One of the requirements of this listed impairment is that plaintiff must provide medical evidence that plaintiff has at least two of the following:

> 1.  Marked restriction of activities of daily living; or
>
> 2.  Marked difficulties in maintaining social functioning; or
>
> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2006 at 488-489).

Plaintiff contends that the findings by Dr. Anderson that plaintiff had a "fair" ability to: (1) deal with work stresses, (2) understand, remember and carry out complex job instructions, (3) behave in an emotionally stable manner and (4) demonstrate reliability correlates with the listing requirement of "marked." Plaintiff relies on the case of Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995), in which the

14

court held that a definition of "fair" as "the ability to
function in this area is seriously limited but not precluded" is
essentially the same as the listed requirement definition of the
term "marked."  "Marked" is defined in the regulations as a
degree of limitation that seriously interferes with a claimant's
ability to function independently, appropriately, effectively and
on a sustained basis.  20 C.F.R. Pt. 404, Subpt. P, App. 1,
12.00C (2006 at 483); Cruse, 49 F.3d at 618.

         However, unlike the definition for "fair" on the form used
in Cruse ("ability to function in this area is seriously limited
but not precluded"), the form used in this case by Dr. Anderson
defined "fair" as the "ability to function in this area is
limited but satisfactory" (R. at 414).  The definition of "fair"
in Dr. Anderson's RFC assessment indicates that the ability to
function is "limited," not "substantially limited," and the
ability to function is "satisfactory" as opposed to the ability
to function is "not precluded."  For these reasons, the court
finds that the definition of "fair" in this case is
distinguishable from the definition of "fair" in Cruse, and the
court does not find that the definition of "fair" used on Dr.
Anderson's RFC assessment is essentially the same as the
definition of "marked" used for listed impairment 12.04.
Therefore, the court does not find that substantial and
uncontradicted evidence on the record establishes that plaintiff

15

meets listed impairment 12.04, and plaintiff's request for an immediate award of benefits is denied.  However, as noted above, the ALJ's failure to consider relevant medical evidence implicates nearly every step in the analysis, including findings at step two through step five, plaintiff's credibility, and the RFC findings.  Therefore, on remand, the ALJ shall make said findings after considering all the relevant medical evidence, including the medical evidence set forth above.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on February 21, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge